IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| ANGEL GARCIA,<br>      *Plaintiff*, | §<br>§<br>§ |
| v. | §   No. MO:18-CV-095-DC |
| | § |
| ELEOS SERVICES, INC.,<br>      *Defendant*. | §<br>§<br>§ |

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

BEFORE THE COURT is Plaintiff Angel Garcia's Motion for Default Judgment. (Doc. 7). Plaintiff seeks recovery from Defendant Eleos Services, Inc., pursuant to 15 U.S.C. § 1692k for Defendant's alleged violations of the Fair Debt Collection Practices Act (FDCPA). (Doc. 1). After due consideration, the Court **GRANTS** Plaintiff's Motion for Default Judgment. (Doc. 7).

### I.   BACKGROUND

Plaintiff alleges Defendant sent a letter on May 19, 2017—and thereafter initiated a telephone-collection campaign—seeking to collect an alleged debt owed by Plaintiff to Southwestern Christian University-net, Account No. 2017-8635 in the amount of $1,872.00 (the Debt). (Doc. 1 at 3). On June 1, 2017, Plaintiff mailed a Request for Validation letter (the Letter) to Defendant, requesting "competent evidence" of the debt owed and demanding that Defendant cease and desist contacting Plaintiff on any of the phone numbers Defendant had on file. (Doc. 1-1 at 2–3). Defendant received the Letter on June 5, 2017. *Id*. at 4. Despite Defendant's receipt of the Letter, Plaintiff subsequently received approximately 35 collection calls from Defendant regarding the Debt. (Doc. 13 at 2).

Plaintiff filed his Complaint against Defendant on May 30, 2018, asserting that Defendant's actions violated 15 U.S.C. §§ 1692c(c), 1692d of the FDCPA. (Doc. 1). Defendant was served on August 13, 2018. (Doc. 4). Defendant did not answer or otherwise appear by or before September 3, 2018—the deadline for Defendant to file an answer. Accordingly, on September 25, 2018, Plaintiff

requested an entry of default as to Defendant. (Doc. 5). The Clerk of the Court entered default against Defendant on September 26, 2018. (Doc. 6).

On November 21, 2018, Plaintiff filed the instant Motion for Default Judgment, asking the Court to render default judgment against Defendant and award Plaintiff's actual damages, statutory damages, and attorney fees. (Doc. 7). On May 17, 2019, the Court held a hearing on Defendant's Motion for Default Judgment. (Doc. 10). To date, Defendant has not made an appearance in this case.

## II. LEGAL STANDARD

After entry of default and upon a motion by the plaintiff, Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In determining whether to enter a default judgment, courts utilize a three-part test. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, the Court considers whether the entry of default judgment is procedurally warranted. *Id*. The factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Second, the court assesses the substantive merits of the plaintiff's claims, determining whether the plaintiff set forth sufficient facts to establish his entitlement to relief. *See 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. In doing so, courts assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Third, the court determines what form of relief, if any, the plaintiff should receive in the case. *Id*; *1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. Generally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.   DISCUSSION

Applying the three-part analysis detailed above, the Court concludes that Plaintiff is entitled to a default judgment against Defendant.

### A. Default Judgment Is Procedurally Warranted.

Reviewing Plaintiff's Motion in light of the six *Lindsey* factors enumerated above, the Court determines that default judgment is procedurally warranted. First, Defendant has not filed any responsive pleadings. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Second, the Defendant's total failure to respond has brought the adversary process to a halt, effectively prejudicing Plaintiff's interests. *Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since Defendant has not responded to the summons and complaint, the entry of default, or the Motion for Default Judgment over the past year. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C.

2011) (finding that default judgment is appropriate if defendants are totally unresponsive and the failure to respond is plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment).

Fourth, there is no evidence before the Court to indicate that Defendant's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendant has had more than a year to respond to Plaintiff's claims or otherwise appear in this matter. Therefore, any purported harshness of a default judgment is mitigated by the Defendant's inaction for this protracted period. *United States v. Rod Riordan Inc.*, No. MO:17-CV-071-DC, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018). Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by Defendant. *Lindsey*, 161 F.3d at 893. Therefore, the Court concludes that default judgment is procedurally warranted.

### B. Default Judgment Is Substantively Warranted.

In light of the entry of default, Defendant is deemed to have admitted the well-pleaded allegations set forth in the Complaint. *Nishimatsu Constr.*, 515 F.2d at 1206. Nonetheless, the Court must review the pleadings to determine whether they provide a sufficient basis for Plaintiff's claim for relief. *Id*. In conducting this analysis, the United States Court of Appeals for the Fifth Circuit looks to the Federal Rule of Civil Procedure 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

Plaintiff alleges that he is a "consumer" and Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(3) and (6), respectively. (Doc. 1 at 3). In order to recover damages, Plaintiff must establish that Defendant failed to comply with a provision of the FDCPA. *See* 15 U.S.C. § 1692k(a). Here, Plaintiff claims Defendant violated 15 U.S.C. § 1692c which provides that:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
>
> If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c. Plaintiff alleges the Letter, including the cease and desist directive, was received by Defendant on June 5, 2017, at 1:04 p.m., via United States Certified Mail. (Doc. 1 at 4–5). Thereafter, Defendant continued to place collection calls to Plaintiff's cell phone. *Id*. Plaintiff provided a cell phone screenshot of at least one such call from a Wichita, Kansas number—where Defendant's principal place of business is located—that occurred on June 9, 2017. *Id*. Plaintiff further asserts that no statutory exceptions apply and thus Defendant's continued contact violated this section of the FDCPA. *Id*.

Plaintiff also alleges Defendant violated 15 U.S.C. § 1692d which provides, in pertinent part, that:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

5

> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d. Plaintiff alleges that Defendant's actions—referencing both the telephone collection campaign, generally, and the calls made after receipt of the Letter—were a nuisance, harassing, and an invasion of Plaintiff's privacy that caused him stress and anxiety. (Doc. 1 at 6).

"The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true—even if doubtful in fact.'" *Wooten*, 788 F.3d at 498 (quoting *Twombly*, 550 U.S. at 555). The Court finds Plaintiff's Complaint contains "a short and plain statement of the claim[s] showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Thus, the Complaint provided Defendant fair notice of Plaintiff's claims under the FDCPA and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. Accordingly, default judgment is substantively warranted.

### C. Plaintiff's Right to Relief

As previously stated, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. Addressing civil liability in actions brought under the FDCPA, § 1692k provides, in pertinent part, that:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
> (1) any actual damage sustained by such person as a result of such failure;
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; . . . and
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a). Here, Plaintiff seeks actual damages, statutory damages, and attorney fees. (Doc. 7 at 7).

6

### 1. Actual Damages

Plaintiff seeks $5,000 for "damages related to emotional distress." (Doc. 7 at 7). Plaintiff's Declaration provides that Defendant was "emotionally distraught and frustrated" over Defendant's "harassing collection calls" prior to sending the Letter, and that Defendant's conduct "induced stress, anxiety, and embarrassment." (Doc. 7-7). Due to the nature of the relief requested and Plaintiff's absence from the default judgment hearing, the Court ordered Plaintiff to file supplemental briefing. (Doc. 11). In his Supplemental Declaration, Plaintiff elaborates that the phone calls interrupted his day-to-day life and caused "extreme frustration" which reduced his quantity and quality of sleep, affected his ability to focus at work, and made him irritable and distracted. (Doc. 13 at 2). Plaintiff further alleges the calls caused "constant fear" that his credit was being destroyed and humiliation when his phone would ring at inopportune moments. *Id.*

In order to recover actual damages for emotional distress under the FDCPA, Plaintiff must provide direct evidence of the nature, duration, and severity of the distress, thereby establishing a substantial disruption in Plaintiff's daily routine. *See Reyelts v. Cross*, 968 F. Supp. 2d 835, 846 (N.D. Tex. 2013), aff'd, 566 F. App'x 316 (5th Cir. 2014)). Although Plaintiff may rely on his own testimony to establish emotional harm, such testimony must explain his injury in reasonable detail and not rely on conclusory statements. *See Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1182 (10th Cir. 2013) (citing *Bagby v. Experian Info. Solutions, Inc.,* 162 Fed. App'x. 600, 605 (7th Cir. 2006); *Ross v. FDIC*, 625 F.3d 808, 818 (4th Cir. 2010)). Plaintiff did not submit actual evidence of distress and injury, but instead relies only on his own statements. *See Knoerr v. Pinnacle Asset Grp., L.L.C., No. CV H-16-599, 2017 WL 1177970, at *3 (S.D. Tex. Mar. 30, 2017).* However, Plaintiff's conclusory statements fail to show the requisite, substantial disruption in Plaintiff's daily routine. *Id.*; *see also Wagner v. BellSouth Telecommunications, Inc.*, 520 F. App'x 295, 299 (5th Cir.

7

2013) (finding the plaintiff's testimony that she lost sleep, was humiliated, and felt "bad," "guilty," and "helpless" were conclusory assertions insufficient to support an emotional damages award); but *c.f. Guajardo v. GC Servs., LP*, 498 F. App'x 379, 385 (5th Cir. 2012) (holding the jury could reasonably have determined that plaintiff proved emotional distress based on her testimony cataloging "mental or physical sufferings, such as 'panic attacks'").

Thus, the Court finds Plaintiff's testimony is insufficient to support an award of emotional distress damages.

   **2. Statutory Damages**

Despite the Court's determination that Plaintiff is not entitled to an award of actual damages, Plaintiff may still recover statutory damages pursuant to § 1692k(a) of the FDCPA. *See Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 150 (5th Cir. 2015) (affirming the magistrate judge's award of the maximum amount of statutory damages although the plaintiff admitted he sustained no actual damages); *Davis v. Credit Bureau of the S.*, 908 F.3d 972, 975, n.4 (5th Cir. 2018) (affirming the award of statutory damages and noting there were no actual damages). Specifically, under § 1692k(a)(2)(A), the Court may award Plaintiff statutory damages of up to $1,000. When determining the amount of liability, the Court shall consider—among other relevant factors—the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. 15 U.S.C. § 1692k(b). Thus, although a single violation under the FDCPA is sufficient to establish liability, the Defendant's culpability is relevant to the Court's determination of the amount of that liability. *See id.*; *see also In re Eastman*, 419 B.R. 711, 728 (Bankr. W.D. Tex. 2009).

Again, Plaintiff alleges: (1) Defendant violated § 1692c by continuing communications after receipt of notice that Plaintiff wished such communications to cease; and (2) Defendant's actions, generally, constituted harassment in violation of § 1692d. (Docs. 1, 7). In support of these allegations, Plaintiff testifies that on or about May 19, 2017, Defendant received a collection letter

from Defendant regarding the Debt. (Doc. 7-7 at 1). In or around that same day, Defendant began calling Plaintiff's cell phone, and continued to do so for the next three weeks. (Doc. 13 at 1). Plaintiff sent his Letter with the statutorily-required notice language—including a cease and desist directive—on June 1, 2017. (Doc. 1-1 at 2). Defendant received the Letter on June 5, 2017. *Id.* at 4. Subsequently, Plaintiff testifies that Defendant "ignored [his] request and continued to call [his] cellular phone approximately 35 times." (Doc. 13 at 2). The Court finds that Plaintiff has established that Defendant's actions were sufficiently intentional and persistent to warrant the award of statutory damages. *See* 15 U.S.C. § 1692k(b).

Accordingly, the Court awards Plaintiff $1,000 in statutory damages pursuant to § 1692k(a)(2)(A) of the FDCPA.

### 3. Attorney Fees

Under the FDCPA, a successful litigant can recover reasonable attorney fees and costs. 15 U.S.C. § 1692k(a)(3). By establishing a prima facie case and Defendant's liability to support an award of statutory damages, Plaintiff is a successful litigant under the terms of the FDCPA and is entitled to attorney fees. *See Alaniz v. Law Office of Joseph Onwuteaka, P.C.*, No. 5:15-CV-00587-RP, 2015 WL 13545188, at *3 (W.D. Tex. Dec. 4, 2015). Plaintiff requests $6,000 in reasonable attorney fees and $424.35 in costs. (Doc. 7 at 7). The Court finds that Plaintiff's requested costs are reasonable, but additional analysis is necessary as to Plaintiff's request for attorney fees.

In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney fee award. *Combs v. City of Huntington, Texas*, 829 F.3d 388, 391 (5th Cir. 2016). First, the Court must calculate the "lodestar," which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. *Id.* at 392. In performing this calculation, the Court excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.*; *see also Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993). The party seeking reimbursement of attorney fees bears the burden to provide sufficient evidence that is adequate for

the Court to determine reasonable hours expended. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995). The lodestar is presumed reasonable. *Combs*, 829 F.3d at 392.

However, once the Court determines the lodestar, it may enhance or decrease the amount of attorney fees based on the relative weights of the twelve "*Johnson* factors." *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 157 (5th Cir. 2015); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 448 F.2d at 717–19.

Accordingly, the Court must first determine whether Plaintiff's counsel's hourly rate is reasonable when compared to the prevailing rates for attorneys of similar skill and experience in the relevant community. *McClain v. Lufkin Indus., Inc.,* 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The relevant community refers to "the judicial district in which the litigation occurred," which—in this case—is the Western District of Texas. *See Ramirez v. Lewis Energy Grp., L.P.*, 197 F. Supp. 3d 952, 956 (S.D. Tex. 2016). In support of his request, Plaintiff relies on a declaration by Seth Crosland—Plaintiff's counsel—to support the award. (Doc. 7-6). Mr. Crosland declares that he is licensed in Texas, a partner at his law firm, and was lead counsel in the instant matter. (Doc. 7-6 at 1). At the hearing, Mr. Crosland further testified that his practice is based in the Dallas–Fort Worth metroplex and he has ten years of experience in consumer and bankruptcy law. Although Mr. Crosland provides that his standard hours rate is $450.00 per

10

hour, Plaintiff seeks $375.00 per hour in his Complaint—alleging that amount is a reasonable hourly rate for litigation attorneys in Texas. (Docs. 7 at 6–7, 7-6 at 1).

The reasonable hourly rate is usually established through affidavits of other attorneys practicing in the relevant community. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Because Plaintiff does not provide any such affidavits, the Court looks to the State Bar of Texas' 2015 Hourly Rate Fact Sheet (Fact Sheet).[1] According to the Fact Sheet, the median hourly rate for an attorney with seven to ten years of experience was $250.00 per hour. Notably, from 2013 to 2015, that median rate increased by 4.6%. Continuing that trend to 2019, the median hourly rate for an attorney with seven to ten years' experience would be approximately $273.52. For an attorney practicing in West Texas, however, the median hourly rate in 2015 was $225.00. The median hourly rate for an attorney practicing bankruptcy and consumer law in Texas in 2015 was $300.00 and $243.00, respectively, with both practice areas seeing an increase in rates from 2013 to 2015. The Fact Sheet did not report median hourly rates specific to West Texas in Mr. Crosland's named practice areas, but the median hourly rate for creditor-debtor law in West Texas was $195.00 as compared to $250.00—the median hourly rate for that practice area generally.

None of these figures, even when adjusted based on the date of the Fact Sheet, support Plaintiff's proffered hourly rate of $375.00. Instead, given Mr. Crosland's experience, the pertinent practice areas, and the nature of the relevant community, the Court finds that an hourly rate of $325.00 is reasonable in this case.

The next step in the lodestar analysis is to determine the number of hours reasonably expended on the litigation. As part of the reasonableness inquiry, the fee applicant has the burden of demonstrating the exercise of billing judgment. *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Billing judgment refers to the exclusion of hours that are excessive, redundant,

---

[1]. STATE BAR OF TEXAS, 2015 HOURLY FACT SHEET (2015), https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182

or unproductive. *Id*. The remedy for lack of billing judgment is a reduction in hours "by a percentage intended to substitute for the exercise of billing judgment." *Id*. In his Declaration, Mr. Crosland provides:

> My total time spent on this case related to [Defendant] is 16 hours, which includes pre-litigation review with client (2.5 hour pro-rated), drafting the complaint (2 hours pro-rated), the preparation of the request for entry of default by clerk (1/2 hour), the instant motion for default judgment (3.5 hours), along with standard reviews of correspondence and loan agreements (5.5 hours).

(Doc. 7-6 at 1). Plaintiff does not provide any additional documentation to establish the reasonability of the hours expended by counsel. Based on the information provided, the Court finds the 5.5 hours associated with "standard reviews of correspondence and loan agreements" to be excessive, duplicative, and unnecessary. *Combs*, 829 F.3d at 391. The remaining 8.5 hours of review, drafting, and preparation listed by Mr. Crosland were reasonable and more than sufficient to litigate this matter. *See Alaniz v. Law Office of Joseph Onwuteaka, P.C.*, No. 5:15-CV-00587-RP, 2015 WL 13545188, at *3 (W.D. Tex. Dec. 4, 2015) (plaintiff's counsel expended 4.7 hours litigating an FDCPA claim in which plaintiff sought, and was awarded, a default judgment and reasonable attorney fees).

Thus, multiplying the reasonable hourly rate of $325.00 by the 8.5 hours of reasonable time expended by Mr. Crosland, the lodestar in this matter is $2,762.50. *See Combs,* 829 F.3d at 391.

Next, the Court considers the factors set forth in *Johnson* to determine whether a departure from the lodestar figure is warranted in this case. 488 F.2d 714 (5th Cir.1974). Again, the *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys;

(10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Id*. at 717–19. After reviewing these factors, the Court finds that a departure from the lodestar amount is not warranted in this case.

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Default Judgment. (Doc. 7). It is therefore **ORDERED**, **ADJUDGED**, and **DECREED** that Plaintiff is entitled to the following relief:

1. $1,000.00 in statutory damages;
2. $2,762.50 in attorney fees; and
3. $424.35 in costs.

It is **FURTHER ORDERED** that Defendant shall pay post-judgment interest in accordance with 28 U.S.C. § 1961.

All other relief not granted herein is **DENIED**.

It is so **ORDERED.**

**SIGNED this 6th day of June, 2019.**

**DAVID COUNTS**
**UNITED STATES DISTRICT JUDGE**